### Richmond

RUTH BICKLEY, ADMINISTRATRIX, ETC.
v. LILA FARMER, ET AL.

January 20, 1975.

Record No. 730970.

Present, All the Justices.

*S. Page Higginbotham (Higginbotham & Puryear,* on brief), for plaintiff in error.

*Robert E. Taylor; Richard W. Schaffer (Taylor, Michie & Callaghan; Sands, Anderson, Marks & Clarke,* on briefs), for defendants in error.

Harman, J., delivered the opinion of the court.

Ruth Bickley, Administratrix of the Estate of Ronald L. Bickley, deceased (plaintiff), was awarded a jury verdict for $2,500.00 [1] in this wrongful death action against Lila Farmer (Farmer) and County School Board of Louisa County (School Board). The jury found in favor of the other defendants, James K. Perkins, individually (Perkins), and James K. Perkins and W. D. Perkins, trading as W. D. Perkins & Son (Perkins & Son).

The trial court entered judgment on these verdicts. We awarded plaintiff a writ of error to determine whether the trial court erred in certain of its instructions to the jury. No cross-error has been assigned by any of the defendants.

Ronald L. Bickley (Ronald) died when struck by a truck as he was crossing U.S. Route 250 on the morning of August 27, 1971. The truck, owned by Perkins & Son, was being driven by Perkins on partnership business.

Ronald, who was seven years of age, resided with his parents, Edward Eugene Bickley and Ruth Bickley, at their home on the soute side of U.S. Route 250 near Ferncliff in a rural area of Louisa County. The Bickley's other children, Ronald's twin brother, Donald, and Debra, then age 10, were the other residents of the household.

August 27 was the first day of the 1972-73 school year in Louisa County. The weather was overcast and a light rain was falling. Four other children from the neighborhood had taken shelter from the rain in the Bickley home while awaiting a school bus. When a westbound bus came into view, all of the children left the Bickley home, crossed the road, and stood on the north shoulder. Mrs. Bickley accompanied the children part of the way and stood at the end of her sidewalk adjoining the south shoulder of the road. Mr. Bickley and a neighbor stood in the front doorway of the house.

Farmer, the bus driver, observed the children as they crossed the road ahead of her. Before stopping, Farmer turned on her blinking signal lights as she approached the point where the children were standing. When the Bickley children, who attended elementary school, entered the bus they were stopped

---

[1] The jury, in apportioning the damages, awarded $500.00 for funeral expenses and $1,000.00 each to Donald Bickley and Debra Bickley, brother and sister of the deceased.

by Farmer who told them that only intermediate and high school students were transported on her bus. She told the Bickley children that they would be picked up by a bus bound for the elementary school. The Bickley children left the bus and walked a few steps west on the shoulder toward the front of the bus.

Farmer, meanwhile, closed the bus door, thereby turning off the flashing light signals, and slowly drove away toward the west. She did not recall ever seeing the approaching truck driven by Perkins.

When Farmer put her bus in motion, the Bickley children turned and walked east on the shoulder to the rear of the bus and then started across the highway behind it. The children were either running or "walking real fast." Debra successfully crossed the road. Both Ronald and Donald, who were following Debra, were struck by the eastbound truck driven by Perkins.

Perkins, who had just left a store approximately a half mile west of the scene of the incident, testified that he had observed flashing signal lights on the bus before he drove from the parking lot of the store. He related that because the lights continued to flash as he approached the bus, he applied his brakes and slowed down to prepare to stop. He testified: "I was watching the lights. They went out. The bus was in motion, slow motion, and it kept on going, and I started to slow down before the lights went out. After they went out and the bus was in motion, I proceeded on."

Perkins testified that he did not see Mrs. Bickley, who was standing at the end of her walk which adjoined the south shoulder of the road, and that he first observed the Bickley children as he ". . . was nearing the front of the bus, close to it, at the time I saw the oldest girl near the center of the road." At that time the bus had moved ". . . [m]aybe several bus lengths, or one, at least, probably."

The highway where the incident occurred was a 24-foot blacktop highway and "almost level." The north shoulder of the roadway was 10 feet in width. The driver of an eastbound vehicle had unobstructed vision of the point where the children were struck for at least a half mile.

The evidence shows that while Mr. and Mrs. Bickley had received no notice from the School Board regarding the bus their children should board, they knew that elementary school pupils had been boarding an eastbound bus for the preceding four

years. Both Mr. and Mrs. Bickley testified that they had been told by neighbors that all children in the neighborhood would ride the same bus during the 1972-73 school year.

The crucial issues here arise from the instructions granted and refused by the trial court.

■ Instruction 22, which was granted by the trial court, reads as follows:

> "The Court instructs the jury that a person seeking to recover for the death of another must himself or herself be free of negligence which proximately caused or contributed to cause the death.
>
> "The Court further instructs the jury that Mr. and Mrs. Bickley each had a duty to exercise ordinary care for the safety of Ronald Leland Bickley. If you believe from the evidence that either Mr. or Mrs. Bickley were guilty of negligence which was the sole proximate cause or efficiently contributed to cause the accident resulting in Ronald's death, then the one, or both, so causing are not entitled to recover from any defendant in this action, but this would not bar the other statutory beneficiaries from recovering."

Plaintiff argues that the evidence did not support the granting of this instruction. Perkins and Perkins & Son point to evidence that Ronald was not wearing a raincoat to protect himself from the weather and that Mr. and Mrs. Bickley were uncertain about which bus their children should ride. The argument continues that the jury could find, from this evidence, that the Bickleys knew, or should have known, that Farmer's bus was not the correct bus; that they should have anticipated that Ronald might "dash back across the road to the protection of the house"; and that the failure of the parents to "go across Route 250 to assist their children or safely lead them back to the house" created a jury issue of contributory negligence on the part of Mr. and Mrs. Bickley.

Farmer and the School Board appear to argue that granting this instruction was, at most, harmless error. In support of the argument they point to Code § 8-636 which gives the jury absolute discretion in the apportionment, between members of the same class, of the recovery in a case of death by wrongful act.

We reject out of hand any contention that the evidence in this

case supported the contributory negligence instruction or that the granting of the instruction was harmless error. The law does not impose upon parents the absolute duty to provide children with raincoats in rainy weather or with escort service to and from a school bus stop. And to say that the granting of the instruction was harmless error is to ignore the fact that the jury denied the parents any participation in the recovery for Ronald's death.

■ Over plaintiff's objection that the evidence did not support it, the trial court granted Instruction 18 which reads as follows:

"The Court instructs the jury that Virginia law recognizes that some accidents are unavoidable in that they would have occurred despite the exercise of reasonable care by the operator of the motor vehicle. If you believe from the evidence in this case that the accident was unavoidable as to the defendants, and was not caused by negligence on their part, then you should find your verdict for the said defendants."

This court has recognized that few automobile accidents occur without fault, and the occasion for the use of an unavoidable accident instruction is rare. It is only where there is a reasonable theory of the evidence under which the parties involved may be held to have exercised due care, notwithstanding that the accident occurred, that an unavoidable accident instruction is proper. *Batts* v. *Capps*, 213 Va. 174, 175-76, 191 S.E.2d 227, 228 (1972).

The granting of such an instruction depends upon the facts of the particular case. In the circumstances shown by the evidence here, the trial court erred in granting the instruction because we perceive no reasonable theory of the evidence that the accident could have occured without negligence on the part of either Farmer or Perkins or both.

■ Plaintiff also objected to Instruction 26, given by the trial court, on the ground that it had no application to the facts of this case. This instruction reads:

"If you believe from the evidence that the defendant, James Kenneth Perkins, did not see, and by the exercise of ordinary care could not have seen, Ronald Leland Bickley, in close proximity to the street, and that Ronald Leland Bickley, suddenly entered the street from behind an

obstruction into the path of the defendant's oncoming vehicle and so closely thereto that the defendant, James Kenneth Perkins, had no reasonable opportunity to avoid striking Ronald Leland Bickley, after seeing him, and that the defendant, James Kenneth Perkins, was otherwise exercising ordinary care, then you shall return your verdict in favor of the defendants, James Kenneth Perkins and W. D. Perkins and Sons."

Assuming, without deciding that the instruction is a correct paraphrase of the rule of law set forth in *Boyd* v. *Brown,* 192 Va. 702, 709, 66 S.E.2d 559, 563 (1951), we agree that it has no application to the facts in the present case. Here the obstruction referred to was a school bus, a bus which Perkins knew to be stopped for the purpose of taking on or discharging school children.

The presence of a school bus, while taking on or discharging school children, is a warning of danger to the driver of other vehicles upon the highway. It is notice to those drivers that children of tender years are or may be in proximity to the bus, and imposes upon such drivers a duty of increased vigilance and care commensurate with the existing circumstances. *Carlton* v. *Martin,* 160 Va. 149, 156, 168 S.E. 348, 350 (1933).

Plaintiff complains that the trial court erred in refusing to grant Instruction 9A which incorporated the statutory definition of "highway" found in Code § 46.1-1 (10) and the statutory definition of "shoulder" set forth in Code § 46.1-1 (10c). The court had granted other instructions using the word "highway." Included in those instructions was Instruction 1 which told the jury, in accordance with Code § 46.1-190 (f), that it was Perkins' duty "to stop, when approaching from any direction, a school bus, which is stopped on the highway for the purpose of taking on or discharging children and to remain stopped until all children are clear of the highway and the bus is put in motion."

Plaintiff's counsel argues here, as he argued below, that Code § 46.1-190 (f) requires a driver approaching a school bus stopped for the purpose of picking up or discharging school children to stop and remain stopped until such children are clear of the highway, *i.e.,* clear of both the pavement and the shoulder thereof. Code § 46.1-1 provides that the definitions

contained therein shall, for purposes of Title 46.1, ". . . have the meanings respectively ascribed to them . . . except in those instances where the context clearly indicates a different meaning . . . ."

But even if we accept the foregoing argument, without deciding its validity, proffered Instruction 9A still would have no application to the present case. Ronald was struck while he was on the pavement. He had not reached the shoulder. And, in any event, Perkins had not stopped at all. So the question whether Perkins should have remained stopped until Ronald cleared the shoulder is purely academic and has no relevance to any issue in the case.

Plaintiff's counsel, in his assignments of error and oral argument, has raised a number of other claims of error. It suffices to say that we have carefully reviewed each of these claims and find them without merit.

Insofar as the judgment below relates to Perkins and Perkins & Son, we reverse for the error in granting Instructions 18, 22, and 26 and remand for a new trial on all issues. Insofar as the judgment relates to Farmer and School Board, considering that the jury's finding of Farmer's negligence is not challenged on appeal, we reverse for the error in granting Instruction 22 and remand for a new trial limited to the issue of damages.

*Reversed and remanded.*