**CIRCUIT COURT OF WARREN COUNTY**

Seymour

v.

McDonald

August 5, 1981

Case No. (Chancery) 3951

By JUDGE HENRY H. WHITING

This case involves a claim for damages by the purchasers of a personal residence against their seller, who occupied the residence at the time of the sale. The purchasers claim that the seller misrepresented the condition of the house in failing to respond fully and truthfully to the purchasers' questions as to whether there were any other defects in the house by answering "no" after certain defects were noted and discussed between them. The purchasers contend that the septic system was defective in that it was inadequate and "backed up" during normal household use and such inadequacy was known by the seller at the time the purchasers made inquiry. The seller denies it was inadequate, denies making the representation, denies a duty to respond even if the question was asked, and finally, denies a lack of reliance on whatever statement was made.

*Findings of Fact*

The Court finds from clear, cogent, and convincing evidence that:

(1) The septic system was defective at the time of sale and required excessive pumping for normal household use.

(2) The seller had had the septic system pumped at least three and possibly as many as four times in the four months immediately preceding the execution of the contract of sale.

(3) The seller knew at the time she talked to the purchasers that her septic system required more pumping than would normally be expected from a properly functioning and sized septic system.

(4) The seller was asked several times whether anything was wrong with the house and, after some defects were discussed, was asked whether anything else was wrong with the house and replied to those non-specific inquiries in the negative at a time when she knew her septic system was defective and required excessive pumping because of those defects.

(5) The buyers bought in reliance on the seller's statement.

(6) The cost to repair the defect (considering the necessity of acquiring additional land) exceeds the difference in market value of the property.

(7) If a purchaser, willing but not required to buy the property, knew of the condition of the system as it actually existed on the day of sale and negotiated with a seller, who was willing to sell but not required to sell on the date of sale, the two of them would have arrived at a reduction in the fair market value of the property in the sum of $3,000.00.

(8) The buyers did not know, and in the exercise of reasonable care, could not have known the system required excessive pumping and could not have discovered the fact independently of the seller's representation without the excavation of all or a portion of the system, requiring an excessive expenditure of money.

(9) Nothing put the buyers on notice of the defects until the system overflowed shortly after they took possession of the property, damaging their carpet and requiring its replacement and other related repairs in connection therewith, all in the reasonable sum of $1,000.00.

### Conclusions of Law

In the ordinary situation, purchasers of real estate are not entitled to rely upon the seller's opinions or

"puffing." *Henning v. Kyle*, 190 Va. 247 (1949) (expression of opinion about condition of house, which conditions could readily be verified by ordinary inspection). However, if the seller knows of a latent defect in the condition of the premises, the seller must answer truthfully and fully any questions fairly raising the issue as to the condition of the premises. *See Horner v. Ahern*, 207 Va. 860 (1967) (ambiguous and incomplete answer by seller to buyer's inquiry as to whether there was termite damage to the property). The inquiries made in this case were sufficient, in the Court's opinion, to require the seller to advise the buyers of the excessive pumping of the septic system. While this concealment did not reach the level of *Armentrout v. French*, 220 Va. 457 (1979) (seller deliberately maintained a fire in the fireplace and cooked odiferous foods to mask the odors of a defective septic system), the failure to answer the inquiry as to whether "anything was wrong with the house" and, after some defects were discussed, whether "anything else" was wrong with the house, did amount to a concealment of a material, important and known defect.

The buyer is not within the range of those cases cited by the seller in which the sources of knowledge are equally available to buyer and seller and the buyer imprudently relies on the seller, exemplified by *Costello v. Larsen*, 182 Va. 567 (1944). Where the defect cannot be discovered without the expenditure of considerable monies, the buyer need not do so but may rely on the seller's representations. *Hazard v. Irwin*, 18 Pick. 95 (Mass. 1836) (latent defect in engine). This case affords relief to the buyer either because of the latent defect not economically discoverable or because the seller has thrown the buyer off his guard by his assurances and diverted him from making a further inquiry. *Horner v. Ahern*, 207 Va. at 864. The VA inspections and observation of the property by the buyers and others did not rise to the level of an independent inspection and lack of reliance. The buyer is not limited to the remedy of rescission as contended by seller. *Horner v. Ahern, supra*, expressly held that the buyer's right of rescission could be waived and damages sought in lieu thereof (207 Va. at 867).

Since the cost of curing the defects in the property exceeds the difference in market value of the property, the measure of damages arising out of the representation is the difference between the market value of the property with and without the defect. *Averett v. Shircliff*, 218 Va. 202 (1977). However, consequential damages may also be recovered for the temporary damage occasioned by the overflow which should have been foreseen by the seller in failing to advise the buyer of the defect, Vol. 5B, Michie's Jurisprudence, *Damages*, § 24, and even though a buyer has already recovered the difference in the value of the property, 22 Am. Jur. 2d, *Damages*, § 136.